IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YELENA SPECTOR, )
 )
    Plaintiff, )
 )
v. ) No. 05 C 5339
 )
U.S. BANK NATIONAL ASSOCIATION, )
d/b/a U.S. BANK, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Yelena Spector filed a two count complaint alleging (1) unlawful termination in violation of Title VII, and (2) unlawful termination under the Family Medical Leave Act, 5 U.S.C. § 6381, et seq. (2004) ("FMLA"). Defendant U.S. Bank National Association ("U.S. Bank") has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, I grant defendant's motion.

### I. Background

U.S. Bank employed Spector as a Sales and Service Manager, at the Riverwood, Illinois bank branch office, from June 20, 2002 until October 19, 2004. Among Spector's job responsibilities were customer service, assisting the Branch Manager in the operation of the branch, and performing other sales and management duties, including teller duty. As Sales and Service Manager, she was also expected to solicit loan applications and submit them for approval

to U.S. Bank's Direct Lending Department. At the time Spector began her employment with U.S. Bank in 2002, the Branch Manager and Spector's immediate supervisor was Heather Wardell. In October 2003, Elizabeth Eckert replaced Wardell as Branch Manager.

Spector's job performance was subject to annual Performance Appraisals, which were distributed in March of each year and evaluated the employee's level of performance for the previous calendar year. U.S. Bank claims that in March 2004, Spector was approached by Eckert and Denise Zajac-Podhajsky, U.S. Bank's Vice President of Retail Banking in Chicago's North District, to discuss her performance and the expectation that she solicit and submit an average of two loan applications per week. Spector disputes this meeting ever took place and that she was verbally informed of their expectations concerning the number of loan applications to be submitted. It is undisputed, however, that on March 30, 2004, Eckert gave Spector a written warning regarding her performance and the expectation that she submit two loan applications per week. The written warning provides, in pertinent part:

> As stated to you by Denise Zajac you are expected to take in two loan applications per week.
> The last time you closed a loan was March 15, 2004 . . .
> It is expected that you will bring two loan applications per week or you will be terminated one month from today on April 30, 2004.

Spector refused to sign this written warning at that time.

In April 2004, Spector became pregnant. She informed Eckert of her pregnancy that same month. Some time later, in August 2004,

2

Spector met with Zajac-Podhajsky to discuss her job performance. Zajac-Podhajsky claims she specifically told plaintiff that she was not meeting expectations by submitting two loan applications a week and that Spector acknowledged this. Spector disputes the contents of this conversation. Instead, she claims that Zajac-Podhajsky discussed the branch's failure to meet corporate goals and that Spector complained that the amount of time she spent behind the teller counter made it difficult for her personally to increase sales, but that she was always urging the other tellers to do so. The record includes an undated letter addressed to Zajac-Podhajsky and signed by Spector, where she acknowledges "the Bank's expectations of me" and how she was "hoping to bring in some checking accounts and loan applications." Spector disputes that this letter was sent in response to the August meeting, which is Zajac-Podhajsky's statement, but that instead it was sent after receiving the written warning in March.

In August 2004, Eckert retired from her employment at U.S. Bank and was replaced by Haris M. Qidwai. Before his promotion, Qidwai had been the Sales and Service Manager at a different branch office. On September 9, 2004, Qidwai contacted Zajac-Podhajsky, through email, about Spector's job performance. In the email, he states

> I know you talked to her about the minimum expectation of 2 apps per week. Is there anything else that I need to include in the minimum expectations? I will get this out to Dawn tomorrow so you can proof-read it.

3

The next day, Zajac-Podhajsky responded

> For the past 12 months perfromance[sic] has been sub par[](check with Richard to see how may apps she has entered into the system this year so far.[]Company expectation is 2 per week[.] Put on warning 4/04?(check date with Montague if you do not have a copy). Talk about what you will do to support her[](keep it simple-training on dial-set up eleads[sic] to give her warm leads) Expectation 30 days to achieve or will separate employment. . .

On September 13, 2004 Qidwai gave Spector a written Action plan. This provided

> I would like to recap your discussion with Denise Zajac-Podhajsky and myself on August 8th 2004, with regards to your performance and the company's expectation. This action plan is intended to clearly articulate our performance expectations for you and the consequences if you fail to meet and maintain them.
>
> As discussed, here are the minimum requirements that must be met:
>
> 1. 2 loan applications (entered in the system) per week.
> 2. 10 proactive calls (logged) to potential business customers per week.
> 3. 10 proactive calls (logged) to solicit investment appointments per week.
> 4. Consumer/business deposit accounts per week.
>
> Our goal is to assist you in any way to help reach these expectations. During the course of the next 30 days, I will be monitoring your performance as well as helping you learn how to access various sales tools provided by the company to help you meet these expectations.
>
> Furthermore, records indicate that your performance for the past 12 months has been far below expectations and the matter brought[sic] to your attention at several occasions. Failure to meet these goals within 30 days will result in disciplinary action, which may include termination of employment.

In early October, 2004, Spector asked Qidwai about taking some

4

vacation time in the last weeks of December 2004. Spector was due to give birth in January 2005, and intended go on pregnancy leave. Qidwai denied Spector's vacation request, claiming that he did not have staffing to cover for her absence in the last weeks of December, because of the small number of employees that worked at the branch. At the time, the branch was staffed with one Branch Manager, one Sales and Service Manager (Spector), and three tellers. Plaintiff does not dispute this, but does claim that she also spoke to Qidwai in October about her need to take time off for the upcoming birth of her child.

Spector was terminated at the end of the business day on October 19, 2006. Earlier in the day, Qidwai exchanged emails about Spector with U.S. Bank's Human Resources Department. These emails reference the Action Plan, unmet expectations, and Spector's failure to document her efforts to comply with the Action Plan. Neither the emails from that date or deposition testimony by any witness present at the time Spector was terminated contain any reference to Spector's pregnancy or intended leave of absence.

II. Summary Judgment Standard

Summary judgment is only appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most

favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I do not make "credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment should be denied. *Anderson*, 477 U.S. at 248.

III. Discussion

a. Title VII claim (Count I)

Plaintiff seeks to proceed on her Title VII claim under an indirect proof method. In order to establish a prima facie case of sex or pregnancy discrimination under *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973), a plaintiff must show, by a preponderance of the evidence, that: (1) she was a member of a protected class; (2) she met her employer's expectations; (3) she was subject to an adverse employment action; and (4) others similarly situated, but not of a protected class, were treated more favorably. *Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005) (citations omitted). Defendant does not dispute the first and third of these elements. Accordingly, I must determine whether Spector met U.S. Bank's expectations and whether any similarly situated individuals were treated more favorably than her.

Determining whether a plaintiff has satisfied the second prong of the *McDonnell Douglas* test involves a bifurcated inquiry: (1) whether the employer's expectations were legitimate and if so, (2) whether the employee was meeting those expectations. The first inquiry "is a limited one," *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 462 (7th Cir. 1986) (citing *Huhn v. Koehring*, 718 F.2d 239, 244 (7th Cir. 1983)), to determine whether the employer communicated her expectations to the employee and whether those expectations were unreasonable. *Id.* (citations omitted). This inquiry can overlap with the analysis to determine whether an employer's explanation for a termination is a pretext for discrimination. *See Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998).

The record is clear that defendant's expectations were communicated to Spector on at least two occasions. The first was on March 30, 2004, in the form of the Written Warning, which Spector refused to sign but acknowledged receiving in her deposition testimony. Significantly, this warning predated Spector's pregnancy. The second was on September 13, 2004, in the form of a written Action Plan, which Spector signed in acknowledgment of receipt. Both documents specifically identify U.S. Bank's expectation that Spector process two loan applications per week. Moreover, the declarations by Eckert and Zajac-Podhajsky provide that Spector was also verbally informed of this perforance

7

requirement as early as March 2004. In an undated letter which predated her termination, Spector also expresses her understanding of these expectations.

There is no evidence that U.S. Bank's expectations were unreasonable. An employer's expectations need only be *bona fide* to satisfy this inquiry. *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997). Nothing in the record suggests the two loan application expectation was unreasonable. In fact, plaintiff vigorously argues that during relevant periods she did satisfy this expectations.

Ultimately, Spector cannot show that she was meeting U.S. Bank's expectations. In arguing the contrary, Spector relies on her annual Performance Appraisal for 2003, the number of loan applications she filed, declarations by U.S. Bank employees concerning the number of loan applications, and her affidavit.[1] Spector's 2003 Performance Appraisal is not of assistance here, for "[t]he critical issue is whether [Spector] was performing well in her job *at the time of her termination.*" *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993) (emphasis added). Even taking the Performance Appraisal in the best light to the

---

[1] Spector also submitted an affidavit by Inna Adamovich, a former U.S. Bank employee, who claims that she was approached by Qidwai after Spector's termination and asked to sign a "Significant Event Form" to "cover" the termination. This affidavit is not relevant in determining whether Spector met U.S. Bank's expectations. Adamovich does not claim to have any knowledge on this subject, nor does her affidavit address the issue.

8

plaintiff, at most this evaluation covered Spector's job performance into March 2004.[2] It was approximately six months later, in the fall of 2004, when the termination took place. In fact, the email exchange between Qidwai and Zajac-Podhajsky, which is contemporary to Spector's last month of employment, exhibits U.S. Bank's dissatisfaction with plaintiff's job performance.

Moreover, the documentary evidence presented indicates that Spector was not submitting an average of two loan applications on a weekly basis. During the period from September 13, 2004 through October 19, 2004, the time after being placed on the Action Plan and leading up to her termination, Spector submitted seven loan applications. This does not average two a week. The U.S. Bank employee declarations on this issue do not change this conclusion. Plaintiff observes that in later audits some employees incorrectly counted only the number of approved applications, instead of the total seven filed by Spector. Under either count, however, Spector does not average two applications a week. Finally, Spector's affidavit cannot salvage her claim. In light of the record here, plaintiff's affidavit is not sufficient to create an issue of

---

[2]The evaluation scale in these Performance Appraisals consist of 1-for exceptional; 2-for highly effective; 3-for solid performance; 4-for needs improvement; 5-for not effective. In her 2003 Performance Appraisal, Spector received an overall performance rating of 3. She also received ratings of 4 in regard to the following: resourcefulness, flexibility, banking operations as a "Job Specific Compentenc[y]"; and obtaining certain performance goals, such as assisting the branch in meeting overall goals. She did not receive any rating above a 3 in her appraisal.

material fact. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996) ("conclusory statements in [the plaintiff's] affidavit do not create an issue of fact") (citations omitted); *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) ("An employee's self-serving statements about [her] ability . . . are insufficient to contradict an employer's negative assessment of that ability").

Spector also fails to present evidence to show that similarly situated individuals were treated more favorably than her. "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citations omitted). In making this determination, I must look at all relevant factors, including whether the employees were "subject to the same standards." *Id.* (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). The employee bears the burden of proving that she was similarly situated to the employee whose treatment she compares to her own. *Id.* at 680.

In this case, Spector does not provide any allegation, much less evidence, that establishes Tanya Becker as a similarly situated employee. Plaintiff simply provides that "after being terminated [she] was replaced by a non-pregnant female, Tanya Becker." Spector does not elaborate whether Becker performs duties

10

similar to Spector's or whether she is held to the same standards. Spector incorrectly argues, without citing to any case law, that all she is required to show is that Becker was not pregnant. However, I cannot compare the treatment of plaintiff and Becker on this single fact.

Because Spector has not shown the second and fourth prongs under *McDonnell Douglas*, I do not need to address whether the reason provided by U.S. Bank for Spector's termination was pretextual and grant defendant's motion for summary judgment on Count I.

b. FMLA claim (Count II)

Spector claims U.S. Bank terminated her in retaliation for requesting leave under the FMLA. In an FMLA claim for retaliatory discharge, the employee has the burden of showing intentional discrimination by the employer. *King v. Preferred Tech. Group*, 166 F.3d 887, 892 (7th Cir. 1999). Claims of retaliatory discharge under the FMLA are analyzed in the same manner as retaliatory discharge claims under other employment statutes, such as Title VII. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Accordingly, Spector must proceed under either the direct or indirect method of proof for her FMLA claim. *Id.*

Under the direct method, Spector may introduce either direct evidence, which is essentially an admission by the decision-maker that her actions were motivated by the prohibited animus, or

circumstantial evidence from which a fact-finder could infer intentional discrimination. *Id.* There is no admission by U.S. Bank here; therefore Spector must necessarily show circumstantial evidence which would support an inference of discrimination. The only arguable piece of circumstantial evidence on this issue is the timing of Spector's termination (within two weeks after her discussion with Qidwai concerning her vacation time). This alone is not enough, however, to overcome the evidence concerning Spector's unsatisfactory job performance. *See id.* at 506-07.

Furthermore, as already discussed in the context of Count I, Spector cannot meet her burden under the indirect method of proof. *See id.* at 503 (examining *McDonnell Douglas* in the FMLA context)(quoting *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002)). Consistent with my analysis of Count I, I find Spector cannot demonstrate her job performance was satisfactory and has not sufficiently alleged the existence of any other similarly situated employee. Accordingly, I grant the defendant's motion for summary judgment on Count II.

IV. Conclusion

For the foregoing reasons, I grant defendant's motion for summary judgment in its entirety.

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
United States District Judge

DATED: October 23, 2006